IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINDA A. FITZPATRICK, MICHAEL W. PETERS, and MARY E. BECKLUN, all individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>NEBRASKA METHODIST HEALTH SYSTEM, INC., THE BOARD OF DIRECTORS OF NEBRASKA METHODIST HEALTH SYSTEM, INC., NEBRASKA METHODIST HEALTH SYSTEM, INC. PARTICIPANT DIRECTED INVESTMENT COMMITTEE, and JOHN DOES 1-30,<br><br>     Defendants. | 8:23CV27<br><br>MEMORANDUM AND ORDER |

   This matter is before the Court on a Motion to Dismiss (Filing No. 17) filed by defendants Nebraska Methodist Health System, Inc. ("Nebraska Health"), the Board of Directors of Nebraska Methodist Health System Inc. ("Board of Directors"), and Nebraska Methodist Health Systems, Inc. Participant Directed Investment Committee ("Committee" and collectively, "defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. For the reasons stated below, the defendants' motion to dismiss is granted in part and denied in part.[1]

---

[1] In the final paragraph of their reply brief (Filing No. 18), the plaintiffs request leave to file an amended complaint should the Court grant the defendants' Motion to Dismiss. Such a conditional and informal request, buried in a brief, does not meet the requirement of Federal Rule of Civil Procedure 7(b)(1) or Nebraska Civil Rule 15.1(a). *See Doe v. Bd. of Regents of Univ. of Nebr.* 509 F. Supp. 1133, 1144-45 (D. Neb. 2020). The informal request to amend is denied.

1

I.  BACKGROUND

The plaintiffs Linda Fitzpatrick, Michael Peters, and Mary Becklun (collectively, "plaintiffs") are suing the defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. As a purported class action, the plaintiffs filed suit on behalf of themselves and all others similarly situated. The plaintiffs assert the defendants mismanaged Nebraska Health's employee-sponsored retirement plan (the "Plan") in violation of various fiduciary duties.

The plaintiffs are former employees of Nebraska Health who participated in the Plan. They allege the Plan is a "defined contribution" or "individual account" plan covering eligible employees of Nebraska Health. *See* 29 U.S.C. § 1002(34). As a defined-contribution plan, participants receive the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. *Id*.

The plaintiffs allege that Nebraska Health is a named fiduciary of the Plan, *see* 29 U.S.C. § 1102(a), and that the Board of Directors appointed a committee of professionals to select and monitor available investment choices. The Committee was to ensure that the investments available to Plan participants were appropriate, had no more expense than reasonable, and performed well as compared to the Plan's peers. According to the complaint, the Board of Directors had a duty to monitor the Committee. In addition to suing Nebraska Health, its Board of Directors, and the Committee, the plaintiffs have sued each member of the Board of Directors and Committee individually as John Doe defendants.

The plaintiffs allege the Committee, and its members, determined the appropriateness of the Plan's investment offerings and monitored investment performance quarterly based on the funds' one-, three- and five-year performance histories. As alleged, several funds were available to Plan participants for investment each year, and a participant could direct all contributions to the investment options the Committee selected.

The plaintiffs admit they do not have actual knowledge of the specifics of the defendants' decision-making process with respect to the Plan, including the defendants' processes for selecting, monitoring, and removing Plan investment options. So, they attempt to state a plausible claim by drawing inferences regarding these decision-making processes through allegations relating to investment options they contend chronically underperformed.

In particular, the plaintiffs contend the Plan offered the "materially underperforming" Wells Fargo target-date funds. Such funds are typically offered as a suite of funds, with each individual fund structured to maximize investment performance based on the participant's target retirement date. Target-date funds are designed to provide a single, diversified investment vehicle with multiple types of assets included in each fund portfolio. Target-date funds may differ depending on their intended glide path[2], asset allocation, and degree to which the underlying investments are actively managed.

To illustrate underperformance, the plaintiffs compare the Wells Fargo funds' performance to various funds and indexes. The plaintiffs identify the T. Rowe Price Retirement I target-date suite and the American Funds target-date suite as comparable funds.[3] The plaintiffs additionally identify Standard & Poor's ("S&P") Target Date Index and Morningstar Lifetime Moderate Index, among others, as comparator indexes.

Aside from the Wells Fargo funds, the plaintiffs allege various other Plan options had lower-cost, better-performing alternatives. These funds include the Vanguard Index

---

[2]As explained by the plaintiffs, target-date funds are divided into two broad categories based on the fund's glide path: "To" and "Through" target date funds. A "To" target date fund is designed to allocate its underlying assets to the most conservative investments at the year of the expected retirement. In contrast, a "Through" target date fund continues its glidepath progression to reach its most conservative asset allocation past the expected retirement date.

[3]The complaint includes other comparator funds in its data tables but does not make any other allegations relating to these funds.

3

Fund, the MFS Value Fund, and the American Europacific Fund. The plaintiffs again identify comparator funds and comparator indexes they contend illustrate the material underperformance of the Committee's selections.

The plaintiffs contend the underperformance of Plan selections raises a strong inference that the defendants' selection and monitoring processes were tainted by incompetence or a lack of effort, and that the defendants should have known about the underperformance of the funds before including them in the Plan. Further, the defendants allegedly failed to replace the relevant underperforming funds when their performance did not improve. The plaintiffs claim that through these actions, the defendants failed to act as prudent fiduciaries.

The gravamen of the plaintiffs' complaint is that, as a direct and proximate result of the alleged breaches of fiduciary duties, the Plan and its participants suffered millions of dollars of losses. Had the defendants complied with their fiduciary obligations, the plaintiffs contend, the Plan's participants would have had more money available to them for retirement. Moreover, the plaintiffs allege the Plan incurred approximately $23,000 in unnecessary advisor fees, paid for by Plan participants.

The plaintiffs' complaint contains two separately pleaded claims under ERISA. First, the plaintiffs claim the Committee and its members breached the duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B), which requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Second, the plaintiffs claim Nebraska Health and the Board of Directors, and its members breached their duty to monitor the Committee in the performance of their alleged fiduciary duties.

## II.  DISCUSSION

### A.  Standard of Review

A motion to dismiss for lack of standing is considered under Rule 12(b)(1). Jurisdiction is a threshold issue. *See Steel Co. v. Citizens for a Better Environmentt*, 523 U.S. 83, 94-96 (1998). The party seeking to invoke federal jurisdiction carries the burden of proof on that issue. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *V S Ltd. Partnership v. HUD*, 235 F.3d 1109, 1112 (8th Cir. 2000). A complaint can be challenged under Rule 12(b)(1) either "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.*

In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts all well pleaded facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.  The Doe Defendants

In the complaint, the plaintiffs generally name each board member and committee member individually as "John Doe" defendants. They allege these defendants are John

Does 1-10 and 11-20, respectively. As to the board members individually, the plaintiffs allege that each member owed a fiduciary duty to the Plan which they allegedly breached by failing to monitor the Committee. As to the Committee members, the plaintiffs allege a breach of the fiduciary duty of prudence, *see* 29 U.S.C. § 1104, for "failing to select prudent investment options or failing to replace investment options when they became imprudent." In addition to Does 1-20, the plaintiffs name "additional officers, employees and/or contractors" who were fiduciaries of the Plan and whose identities are currently unknown to the plaintiffs. These unnamed defendants are referenced as John Does 21-30.

The Federal Rules of Civil Procedure do not contain any provisions for suing unknown parties, and it is generally "impermissible to name fictitious parties as defendants" in federal court. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). However, in certain circumstances, "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery." *Id*.

Without identifying the Doe defendants, the defendants purport to move to dismiss the individual board members and committee members identified as John Does 1-20. In doing so, they do not contend that the identity of the various John Does cannot be ascertained after reasonable discovery.[4] Rather, they put forth specific legal arguments on behalf of the John Does as to why each should be dismissed based on the facts alleged. While these arguments may or may not have merit, the Court is not currently in a position to address them. At this time, the John Doe defendants are unknown. More importantly, they have not been served, and are not presently before the Court. Under such circumstances, the Court doubts that the named defendants and their counsel have the authority to respond for the as-of-yet unidentified defendants and seek dismissal on their behalf. *See Ballinger v. Cedar County*, 810 F.3d 557, 559 (8th Cir. 2016) (explaining the

---

[4]In fact, it is likely that the defendants know the identities of most of the John Doe defendants, but their identities are not in the record.

district court should not have included the John and Jane Does in its Rule 12(b)(6) dismissal "because the Does were never before the district court"). For those reasons, the Court denies the defendants' motion as to the John Doe defendants at this time, although many of the same arguments for dismissal will likely apply to a later-identified Doe.

### C. Standing

#### 1. Article III Standing

The defendants first assert the plaintiffs have failed to establish standing under Article III of the U.S. Constitution. The defendants do not dispute that the plaintiffs have Article III standing with respect to the funds in which they were invested.[5] Instead, the defendants argue the plaintiffs lack standing to challenge funds in which they did not personally invest. The plaintiffs acknowledge that some of their allegations relate to funds not in their own Plan accounts but assert that the suit is brought in a representative capacity on behalf of the Plan as a whole pursuant to 29 U.S.C. § 1132(a)(2) (civil enforcement). In other words, the plaintiffs argue that the plaintiffs in an ERISA case may seek recovery on behalf of the entire plan, even if they did not personally invest in every one of the funds that caused injury.

To establish Article III standing at the pleading stage, a plaintiff must allege facts plausibly demonstrating: (1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) the defendant was the cause of the injury, and

---

[5]Plaintiff Fitzpatrick is alleged to have invested in the American Funds EuroPacific Growth Fund and the Massachusetts Financial Services ("MFS") Value Fund. Plaintiff Peters is alleged to have invested in the T. Rowe Price Institutional Large-Cap Core Growth Fund and the MFS Value Fund. Plaintiff Becklun is alleged to have invested in the Wells Fargo Target 2040 Fund. All the plaintiffs allege to have suffered damages from consulting fees and diminished returns based on underperforming funds and excessive fees. The defendants challenge to standing relates to other Wells Fargo target-date funds and the Vanguard Index Fund.

(3) the injury would likely be redressed by the requested judicial relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The plaintiffs with claims arising under ERISA are not absolved of establishing Article III standing. *See Thole v. U.S. Bank N.A.,* 590 U.S. ___, ___, 140 S. Ct. 1615, 1619 (2020). However, the Eighth Circuit has recognized that a plaintiff who is injured in relation to his or her own plan assets—and thus has Article III standing—may proceed under § 1132(a)(2) on behalf of the plan or other plan participants even if the relief sought extends beyond his own injury. *See Braden*, 588 F.3d at 592 *(citing Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Sprint Commc'ns Co. v. APCC Servs. Inc.*, 554 U.S. 269, 287 (2008)). The defendants argue the Supreme Court's recent decision in *Thole* requires a different result. The Court disagrees.

In *Thole*, participants in an ERISA defined-benefit pension plan brought a putative class action against their former employer and others, alleging breaches of the duties of loyalty and prudence under ERISA. *See Thole*, 590 U.S. at ___, 140 S. Ct. at 1618. As participants in a defined-benefit plan, they received a fixed payment each month regardless of the plan's value or its fiduciaries' good or bad investment decisions. *Id*. The plaintiffs had been paid all their monthly benefits and were contractually entitled to those payments for the rest of their lives. *Id*.

Unlike here, the plaintiffs in *Thole* participated in a defined-benefit plan, rather than a defined-contribution plan, had not sustained <u>any</u> monetary injury, and had "no concrete stake in [the] lawsuit." *Thole*, 590 U.S. at ___, 140 S. Ct. at 1618. There, the participants continued to receive the same fixed payments from the plan and could not demonstrate that succeeding in the litigation would affect their fixed payments. *Id*. at 1619. Thus, the Supreme Court held the plaintiffs did not have Article III standing. *Id*. In reaching this conclusion, the Court emphasized the nature of the plan at issue stating, "participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to participants in a defined-contribution plan." *Id*.

8

Here, the plaintiffs claim to have invested in several of the funds they allege were imprudently managed and challenge the defendants' fiduciary process as a whole. The plaintiffs have alleged sufficient injuries to their own plan accounts, as well as injuries which arguably affect a large number of plan participants. As the plaintiffs point out, the Supreme Court's distinction between the type of plan at issue is significant. The present challenge is more akin to the trust-based theory of standing discussed in *Thole*, rather than the defined-benefit plan actually decided. *Thole*, 590 U.S. at ___, 140 S. Ct. at 1619-20. ("[T]he value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk. By contrast, a defined-benefit plan is more in the nature of a contract.").

Moreover, the Supreme Court in *Thole* anticipated claims made on behalf of the plan in relation to Article III standing, noting "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the dispute.'" *Thole*, 590 U.S. at ___, 140 S. Ct. at 1620 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)) (internal quotations marks omitted). Here, the plaintiffs themselves have a concrete stake in the suit.

The defendants seem to suggest the Eighth Circuit in *Braden* ignored the concept of Article III standing, but that court squarely addressed the issue of standing in conjunction with the claims Braden asserted on behalf of the plan or other participants. *See Braden*, 588 F.3d at 591-92. *Thole* does not alter this framework. As such, the plaintiffs have standing to bring the present claims even with respect to the funds in which they were not personally invested.

### 2. Injunctive relief

The defendants next assert that the plaintiffs lack standing to seek prospective injunctive relief as former plan participants because they do not face ongoing or future

harm. The plaintiffs' brief does not address this issue. Based on the pleadings, the Court agrees with the defendants.

It is not entirely clear if, and to what extent, the plaintiffs seek injunctive relief as the complaint merely mentions an injunction in passing.[6] Similarly, the plaintiffs' allegations regarding their status as former or current plan participants is vague. As pleaded, the plaintiffs "*participated* in the Plan." There are no allegations that the plaintiffs are current plan members or that they expect to rejoin the plan in the future. As former, not present, plan participants, they have not alleged a real or immediate threat of future injury based on the defendants' conduct. *See Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir. 2000) (explaining that to establish injury in fact for purposes of injunctive relief, a plaintiff must show that he "faces a threat of ongoing or future harm"). Any injunctive relief for future actions by the defendants relating to the plan at issue would not affect the plaintiffs. Therefore, the Court finds that the plaintiffs lack standing to pursue injunctive relief. *See Burris v. IASD Health Servs. Corp.*, No. 4:94-cv-10845, 1995 WL 843859, at *10 (S.D. Iowa Oct. 2, 1995) ("Plaintiff's complaint does not establish that she is currently a participant in the plan . . . [or] that she has an expectation of rejoining the plan. Any injunctive relief issued by this Court, therefore, would not affect the plaintiff . . . [and] the Court finds that plaintiff lacks standing to pursue those claims.")

### D. Breach of Fiduciary Duties

The plaintiffs' complaint contains two separately pleaded claims under ERISA. The plaintiffs first claim the Committee breached the duty of prudence in violation of 29 U.S.C. § 1104(a)(1)(B). The plaintiffs next claim Nebraska Health and the Board of Directors breached their duty to monitor the Committee in the performance of their alleged fiduciary

---

[6]The complaint makes two brief references to injunctive relief when discussing the plaintiffs' class-action allegations and seeks "an order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties." *See* Filing No. 1 at p. 11, 12, and 40.

duties. *See* 29 U.S.C. § 1109(a). The defendants argue the plaintiffs have not sufficiently alleged either claim.

The Supreme Court has stressed that a motion to dismiss is an "important mechanism" for "weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Amgen Inc. v. Harris*, 577 U.S. 308, 311 (2016) (per curiam). In passing ERISA, Congress intended to create a system that is not "so complex that administrative costs, or litigation expenses" discourage employers from sponsoring benefit plans or individuals from serving as fiduciaries. *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted). Given the extensive nature of discovery in large ERISA class actions, the Supreme Court has instructed lower courts to engage in "careful, context-sensitive scrutiny of a complaint's allegations." *Fifth Third Bancorp*, 573 U.S. at 425. "At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Northwestern Univ.*, 595 U.S. ___, ___, 142 S. Ct. 737, 742 (2022).

Even so, because most of the information about fiduciaries' conduct in arriving at an investment decision is necessarily private, the Eighth Circuit has recognized that "no matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. Thus, the plaintiffs are not "required to describe directly the ways in which [defendants] breached their fiduciary duties," or "the process by which the Plan was managed" or "to plead facts tending to contradict . . . inferences" supporting alleged lawful conduct. *Id*. at 595-96. With this in mind, the Court considers the plaintiff's claims below.

1.  **Duty of Prudence**

The plaintiffs' primary allegation is that the Committee breached their fiduciary duties owed to participants by failing to engage in an "appropriate and prudent process"

11

when they either (1) failed to select prudent investment options or (2) failed to replace investment options when they became imprudent. Because the funds purportedly underperformed without action from the Committee, the plaintiffs allege that the Plan suffered millions of dollars in losses.

The Committee raises several arguments as to why, in their view, the plaintiffs' duty of prudence claim fails. Its primary argument, however, is that the complaint lacks sufficient allegations for the Court to infer an imprudent process. To this point, the Committee argues that alleged underperformance, without more, is insufficient to state a viable claim under ERISA. They also argue that the plaintiffs fail to identify any comparable funds that the defendants could have invested in, but did not, as they contend is required under governing law.

In a breach-of-fiduciary-duty-of-prudence claim, a plaintiff typically clears the pleading bar by alleging enough facts to "*infer* . . . that the process was flawed." *Davis v. Washington Univ.*, 960 F.3d at 478, 482-83 (quoting Braden, 588 F.3d at 596 (emphasis in original)). The key to nudging an inference of imprudence from possible to plausible is providing "a sound basis for comparison—a meaningful benchmark"—not just alleging that "costs are too high, or returns are too low." *Id*. at 484. "[T]here is no one-size-fits-all approach" to providing "a meaningful benchmark" and that it "depends on the totality of the specific allegations." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 280-81 (8th Cir. 2022); *see also*, *Hughes*, 595 U.S. at ___, 142 S. Ct. at 740 (noting ERISA requires a "context-specific" inquiry). To that end, the Court rejects the defendants' bright-line rule that allegations of underperformance alone cannot state a claim.

The defendants next contend that the claims are insufficient because the plaintiffs fail to identify any comparable funds which provide a meaningful benchmark for the Court to infer a flawed process. In response, the plaintiffs contend the question of apt comparators is an issue to be decided on summary judgment, not the pleadings. But the Eighth Circuit has already rejected the plaintiffs' contention. In *Matousek*, the Eighth

12

Circuit affirmed the dismissal of an ERISA complaint at the pleadings stage where the plaintiffs failed to provide a meaningful benchmark for an allegedly underperforming retirement plan. *See Matousek*, 51 F.4th at 281. The question, then, is whether the plaintiffs sufficiently alleged comparators to plausibly state a claim under Rule 12(b)(6).

The plaintiffs' allegations of underperforming funds are categorized into two groups: the "Wells Fargo Target Date Suite" and "other" funds to include Vanguard Index Fund, MFS Value Fund, and the American Funds EuroPacific Fund. The arguments by both parties are the same for both groups, so the Court addresses them together. For both groups, the plaintiffs rely on the so-called "Morningstar" categories and indexes to identify meaningful comparators. The defendants take issue with the plaintiffs' comparisons arguing, primarily, that the complaint makes no allegations about the composition of the comparator funds such as asset allocations, investment-management strategies, or risk profiles.

The complaint details that Morningstar is a "well respected and accepted financial industry fund database" used throughout the industry. Specifically, the complaint alleges a Morningstar category is assigned by placing funds into peer groups based on their underlying holdings. "The underlying securities in each portfolio are the primary factor in [Morningstar's] analysis . . . Funds are placed in a category based on their portfolio statistics and composition over the past three years." The plaintiffs go on to allege that another "valuable comparator" is the S&P Target Date Index, which is a "prominent and widely-accepted target date bench mark for 'through' target date funds, and the primary benchmark throughout the industry." This is the extent of the plaintiffs' allegations detailing the characteristics of the comparators it identified. The Court finds these allegations alone are insufficient.

While some courts[7] have found the use of Morningstar categories to be a proper consideration, the Eighth Circuit has not addressed these indicators or deemed them an appropriate benchmark.[8] Instead, the Eighth Circuit has set out a stringent examination which includes a detailed look at the composition of comparator funds, including the type of assets, investment strategies, and risk profiles. *See Matousek*, 51 F.4th at 281. While the complaint includes some information about the challenged funds themselves (i.e., glide path, active versus passive management, and investment strategy), it fails to identify the same factors in each alleged peer group. As in *Matousek*, "the composition of the peer groups remains a mystery." *Id.*

The generalities the plaintiffs use to describe the Morningstar categories, in combination with the lack of any allegations about some of the named comparators, leaves much to be desired, and the Court finds the plaintiffs' allegations do not provide a meaningful benchmark for the Court to reasonably evaluate the plausibility of their claims. *See Matousek*, 51 F.4th at 281 (finding the plaintiffs failed to provide a meaningful benchmark to support a duty of prudence claim absent details about whether the cited peer groups held similar securities, had similar investment strategies, or reflected a similar risk profile, and there was no explanation of what types of funds were in each peer group); *Meiners*, 898 F.3d at 823 (rejecting an alleged benchmark that had "some similarities" as

---

[7]*See, e.g.*, *Dover v. Yangfeng US Automotive Interior Sys. I LLC*, 563 F. Supp. 3d 678 (E.D. Mich. 2021) (finding use of Morningstar categories sufficient at the motion-to-dismiss stage); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *16 (N.D. Cal. Aug. 29, 2016) (using Morningstar category rankings to argue that a particular fund "lagged its benchmark"); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 32 (1st Cir. 2018) (allowing expert testimony regarding comparators from a Morningstar index)*; Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 697 (W.D. Mo. 2019) (same).

[8]The plaintiffs only identify one district court within the Eighth Circuit where the court found the use of Morningstar comparators to be meaningful benchmarks. *See Snyder v. UnitedHealth Grp., Inc.*, No. CV 21-1049 (JRT/BRT), 2021 WL 5745852, at *3 (D. Minn. Dec. 2, 2021). However, this case was decided before the Eighth Circuit's decision in *Matousek* which provides a more-detailed analysis.

14

inappropriate "because it permits plaintiffs to dodge the requirement for a meaningful benchmark"). Based on the current allegations, the Court is unable to "connect the dots in a way that creates an inference of imprudence." *Davis*, 960 F.3d at 486. Therefore, the plaintiffs do not state claim for breach of fiduciary duty of prudence and this claim will be dismissed.

### 2. Duty to Monitor

The plaintiffs' second claim is that Nebraska Health and the Board of Directors breached their fiduciary duties by failing to monitor the Committee. The defendants argue these claims are wholly derivative of the plaintiffs' underlying claim for breach of fiduciary duty of prudence, and because the plaintiffs have failed to adequately allege the underlying claim, their claims for failure to monitor should also be dismissed. The Court agrees. The plaintiffs do not plausibly allege that the Committee breached its fiduciary duty, and therefore they cannot plausibly allege Nebraska Health or the Board of Directors failed to monitor the Committee. The plaintiffs' second claim for relief against these defendants is also dismissed.

Based on the foregoing,

IT IS ORDERED:

1. Defendants Nebraska Methodist Health System, Inc., the Board of Directors of Nebraska Methodist Health System, Inc., and Nebraska Methodist Health System, Inc. Participant Directed Investment Committee's Motion to Dismiss (Filing No. 17) is granted in part and denied in part as set forth above.
2. Linda Fitzpatrick, Michael Peters, and Mary Becklun's claims against Nebraska Methodist Health System, Inc., the Board of Directors of Nebraska Methodist Health System, Inc., and Nebraska Methodist Health System, Inc. Participant Directed Investment Committee are dismissed with prejudice.

Dated this 9th day of August 2023.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge